UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SIDE BY SIDE REDEVELOPMENT, INC.                CIVIL ACTION

VERSUS                                          NUMBER: 09-3861

CITY OF NEW ORLEANS                             SECTION: "I"(5)


## ORDER AND REASONS

Presently before the Court is defendant's motion for summary judgment, plaintiff's opposition thereto, and the parties' supplemental memoranda. (Rec. docs. 28, 35, 38, 39). For the reasons that follow, it is ordered that defendant's motion is granted and that plaintiff's suit is dismissed without prejudice.

Plaintiff, Side by Side Redevelopment, Inc. ("SBS"), is a Louisiana non-profit corporation with its principal place of business located in Orleans Parish. Pursuant to a tax sale deed that was executed on January 20, 2004 and recorded on March 3, 2004, plaintiff purchased a piece of property and structure situated at 3700 Milan Street and 4207 South Tonti Street in New Orleans. According to its complaint, at the time of the purchase

SBS intended to renovate the property which was both residential and commercial in nature. (Rec. doc. 1, ¶ 7). In the summer of 2008, plaintiff learned that the building had been demolished by or at the request of the City. Plaintiff alleged that it received no pre or post-demolition notice of the action taken by the City and was denied due process notice and an opportunity to be heard both before and after the demolition of the structure. (Id. at ¶'s 9-13). On June 15, 2009, plaintiff filed the above-captioned complaint "... under the Fifth and Fourteenth Amendments of the United States Constitution[,]... under 42 U.S.C. Section 1983", and "... under the laws of the State of Louisiana." (Id. at ¶'s 1,2). Plaintiff alleged that it had been deprived of property without due process of law in violation of the Fourteenth Amendment. (Id. at ¶ 15). "Concurrently and/or in the alternative, plaintiff [further alleged that it] was deprived of property without just compensation in violation of the Fifth Amendment to the United States Constitution." (Id. at ¶ 16). These deprivations, plaintiff alleged, were the result of a custom or policy and a failure to train or supervise on the part of the City. (Id. at ¶'s 19-33). Plaintiff additionally alleged that "[a]n action in state court for damages pursuant to L.C.C. Art. 2315 does not provide an adequate post-deprivation remedy" because "[a] judgment rendered against the City in state court is essentially unenforceable and uncollectible

2

unless and until the City decides it will appropriate funds to pay the judgment." (<u>Id</u>. at ¶ 34).

In its present motion, the City advises that in the days following the landfall of Hurricane Gustav in September of 2008, it began canvassing neighborhoods in search of buildings that had been effected by the storm. Post-Gustav, the City states that there were approximately six to eight actual building collapses per day and another forty to sixty structures that it identified per day as being in imminent danger of collapse. The SBS property at issue in this case was one of the properties that was so identified and it was thus demolished by the City on September 14, 2008. Given the alleged exigency of the circumstances, the City asserts that it was impractical to or that it had insufficient time to provide SBS with notice of the demolition prior to its occurrence. Citing Sections 26-165 and 26-166 of the Code of New Orleans,[1]/ the City argues

---

[1]/ Those Sections provide as follows:

Sec. 26-165. Public nuisance defined.
*Public nuisance.* Any garage, shed, barn, house, building or structure shall be deemed to be a public nuisance if:

a) By reasons of being dilapidated, decayed, unsafe or unsanitary it is detrimental to the health, morals, safety, public welfare, and the well being of the community, endangers life or property or is conducive to ill health, delinquency and crime; or

(b) It is a fire hazard; or

(c) By reason of the conditions which require its continued vacancy, it and its surrounding grounds are not reasonably or adequately maintained thereby causing deterioration and

3

that it had the authority to make the imminent danger determination and to thereafter demolish the structure without providing such notice.

The City also argues that, because an imminent danger determination by its very nature involves a judgment call about the integrity of a given structure, it is immune from liability under LSA-R.S. 9:2798.1. The City contends that, as a tax sale purchaser, plaintiff's interest in the property is inchoate. Finally, the City posits that plaintiff's Fifth Amendment takings claim, as well as its procedural due process claim, is premature because SBS failed to seek compensation for the demolition through available state procedures and that any substantive due process claim raised by plaintiff's complaint does not assert a right that is not already protected by its takings claim. (Rec. doc. 28).

---

creating a blighting influence or condition on nearby properties and thereby depreciating the value, use and enjoyment to an extent that is harmful to the public health, welfare, morals, safety and the economic stability of the area, community, or neighborhood in which the public nuisance is located. (M.C.S., Ord. No. 21228 § 2, 9-4-03).

Sec. 26-166. Imminent danger of collapse.
The code official and the department of safety and permits shall determine as a matter of fact whether or not a public nuisance is in imminent danger of collapse and constitutes a menace to public safety. If the determination is made that a public nuisance is in imminent danger of collapse and constitutes a menace, then the code official is authorized to cause the demolition of the nuisance without previous notice to the owner, executor, administrator, agent, lessee, or any person who may have a vested or contingent interest in the public nuisance. (M.C.S., Ord. No. 21228, § 2, 9-4-03).

In its opposition to the City's motion, SBS characterizes this case as involving "... the wrongful demolition of property without due process notice and an opportunity to be heard prior to the demolition." Plaintiff argues that Section 26-166 is unconstitutional on its face and/or as applied and that factual issues exist as to whether the property was actually in imminent danger of collapse and as to when the imminent danger determination was actually made. Plaintiff essentially argues that any such determination would have to be made by an expert in the field, that its ownership of the property could have been ascertained within minutes, and that the City's official policy is to provide no advance notice of imminent danger demolitions. On the issue of its status as a tax purchaser, SBS points out that the three-year period during which the previous owner could have satisfied the outstanding tax lien and retained the property had expired. Addressing R.S. 9:2798.1, plaintiff asserts that a state statute cannot confer immunity for federal constitutional violations. Finally, SBS argues that its procedural due process claim is a valid one which predominates over any takings claim, the latter being pled merely in the alternative. Although the City's motion also sought the dismissal of any substantive due process claim that may have been presented in plaintiff's complaint, plaintiff did not acknowledge that such a claim was pled and only addressed the

proposed dismissal of its procedural due process and takings claim. (Rec. doc. 35).

As was ordered by the Court, the City subsequently filed a supplemental memo in support of its motion in which it again argued that plaintiff's takings claim is unripe because plaintiff has not pursued inverse condemnation proceedings in state court which provide an adequate remedy to compensate it for its loss. The City also renewed its argument as to plaintiff's other claims. However, by way of a supplemental affidavit from its Director of Housing Code Enforcement, the City revealed that the Director had made the imminent danger determination on September 13, 2008 after inspecting the property following receipt of a complaint from a neighborhood association leader expressing safety concerns over the condition of the structure. Upon arriving at the site, the Director observed the structure present on plaintiff's property to be compromised and actually leaning on the house situated on the adjacent lot. The inspection revealed that the entire structure had been completely gutted and stripped of everything inside leaving the outer walls standing with very little bracing or stud support. It also appeared that the entire rear portion of the structure had been removed which left the building exposed to continuous compromise by wind and water. Severe termite infestation was observed within the walls which may have

contributed to the deterioration of the structure's integrity. A construction contractor was contacted that day and the demolition went forward the following day making it impracticable, the City alleges, to provide SBS with advance notice. (Rec. doc. 38). The photographs of the structure that were attached to the City's motion support the Director's supplemental affidavit and reveal that plaintiff's structure was actually leaning onto and was in contact with the house on the adjacent lot. (Rec. doc. 28-5, pp. 3-6).

By way of its own supplemental memo, plaintiff takes great umbrage with the City's belated revelation as to when the imminent danger determination was made. SBS reiterates that its due process claim is its primary one and, at any rate, that its takings claim is ripe for review because state court remedies are inadequate. Citing Article 12, §10 of the Louisiana Constitution and LSA-R.S. 13:5109, plaintiff argues that any judgment that it may obtain in any state court proceeding can only be paid with funds appropriated for that purpose and that the City has a practice of not paying judgments or settlements in a timely fashion or in full. In support of the latter assertion, plaintiff points to the City's conduct in two prior lawsuits, one that had been filed here and one that had been litigated in state court. SBS asserts that its procedural due process and "ancillary" takings claims are ripe and

that any safety concerns over the building could have been alleviated short of demolition, thus making the taking a violation of substantive due process. Plaintiff again invites the Court to determine whether the imminent danger demolition ordinance is constitutional. (Rec. doc. 39).

Defendant is now before the Court seeking summary judgment pursuant to Rule 56(c), Fed.R.Civ.P. Summary judgment is appropriate under Rule 56(c) when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986). Although all inferences drawn from the evidence are to be resolved in the non-movant's favor, it may not rest on the mere allegations or denials in its pleadings. Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Rather, once a properly supported motion for summary judgment is made, the burden shifts to the non-movant who bears the burden of proof at trial to show with "'significant probative' evidence" that there exists a triable factual issue. Kansa Reinsurance v. Cong. Mortgage Corp. of Texas, 20 F.3d 1362, 1371 (5th Cir. 1994)(quoting In re: Municipal Bond Reporting Antitrust Litig., 672 F.2d 436, 440 (5th Cir. 1982)). That burden is not satisfied by "... 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' .... by 'unsubstantiated assertions,' ... or by only a 'scintilla' of

evidence." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(citations omitted). Rather, the nonmovant "... must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case; naked assertions of an actual dispute will not suffice." <u>Matter of Lewisville Properties, Inc.</u>, 849 F.2d 946, 950 (5th Cir. 1998). The insufficiency of the proof must be such that it would prevent a rational finder of fact from finding for the non-moving party. <u>Phillips Oil Co. v. OKC Corp.</u>, 812 F.2d 265, 272-73 (5th Cir.), <u>cert</u>. <u>denied</u>, 484 U.S. 851, 108 S.Ct. 152 (1987).

The Court begins its discussion of the matter before it by highlighting what was and was not pled by plaintiff in this case. At the outset of its original complaint, SBS properly asserted that "[t]his action arises under the Fifth and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. Section 1983." (Rec. doc. 1, ¶ 1).[2]/ The factual allegations presented in plaintiff's complaint focus on a denial of due process notice and an opportunity to be heard. (<u>Id</u>. at ¶'s 12, 13). Later, plaintiff alleged that it was "... deprived of property without due process

---

[2]/ Section 1983 creates no substantive rights on its own but simply provides a remedy for the rights that it designates, i.e., other constitutional rights and federal laws. <u>Johnston v. Harris County Flood Control District</u>, 869 F.2d 1565, 1573-74 (5th Cir. 1989), <u>cert</u>. <u>denied</u>, 493 U.S. 1019, 110 S.Ct. 718 (1990)(citing <u>Irby v. Sullivan</u>, 737 F.2d 1418, 1428 (5th Cir. 1984)). Plaintiff's §1983 claim thus provided the mechanism by which it could assert its Fifth and Fourteenth Amendment violations in this case.

of law in violation of the Fourteenth Amendment ..."and "[c]oncurrently and/or in the alternative, plaintiff was deprived of property without just compensation in violation of the Fifth Amendment to the United States Constitution." (Id. at ¶'s 15, 16). Consistent with what was alleged in its complaint, SBS's opposition to the City's motion opens with the characterization that "[t]his case involves the wrongful demolition of a property without due process notice and an opportunity to be heard prior to the demolition." (Rec. doc. 35, p. 1). Absent from plaintiff's complaint was any specific allegation that the City's imminent danger demolition ordinance was unconstitutional, either on its face or as applied. In fact, the ordinance is not cited in plaintiff's complaint at all. And in terms of relief, plaintiff's complaint did not seek a declaration that the City's imminent danger demolition ordinance was unconstitutional.

After making several preliminary arguments, the City's motion focuses on what it perceived to be the primary claim in this case, plaintiff's Fifth Amendment takings claim. The City argues that said claim is unripe and premature because it has not been litigated through the state court system despite the existence of such available remedies. The same holds true for the alleged procedural due process violation because until plaintiff is denied just compensation for its property through such state law

mechanisms, a determination of whether the procedures afforded to plaintiff were less than what was constitutionally required cannot be made. The City also argues that any substantive due process claim raised by plaintiff's complaint is subsumed by plaintiff's taking claim as it made no allegation, for example, that the property was demolished pursuant to an unconstitutional law.

In an obvious effort to avoid the effects of the jurisprudence that was cited by the City, plaintiff argued in its initial opposition memoranda that its procedural due process claim, rather than its takings claim, is its primary cause of action herein and, at any rate, that the state procedures that are available to compensate it for its loss are inadequate. Although not being specifically pled in its original complaint, plaintiff asserted for the first time its belief that the City's imminent danger demolition ordinance is unconstitutional but stated that said issue need not be resolved as there are genuine issues of material fact that preclude summary judgment. (Rec. doc. 35, p. 2). At the same time, plaintiff concedes that demolitions without prior notice are permissible in some cases. (Id.). Responding to the City's assertion in its supplemental memorandum that the ordinance in question is constitutional, plaintiff now suggests in its supplemental opposition that such a legal determination must be made by the Court. (Rec. doc. 39, p. 11). Yet plaintiff

11

articulates no level of review or scrutiny to which the particular ordinance should be subjected.

As noted earlier, the supplemental affidavit supporting the City's motion for summary judgment indicates that on September 13, 2008, its Director of Housing Code Enforcement, acting in response to an emergency telephone call from a neighborhood association leader, personally inspected the property at issue, spoke with an adjacent neighbor regarding the condition of the structure, and determined it to be in imminent danger of collapse and requiring immediate demolition. He then contacted a construction company representative and requested that the structure be demolished immediately which was accomplished the following day. (Rec. doc. 38-1).

In a previous demolition case that was brought by SBS, the District Judge to whom this case was initially allotted touched upon the permissibility of exigent demolitions, as follows:

> [i]n *Fuentes,* the Supreme Court held that a state may only deprive a party of their significant property interest without notice and a hearing in "truly unusual" situations where: (1) "the seizure is directly necessary to secure an important governmental or general public interest" and (2) "there has been a special need for very prompt action." *Id.* at 89 ("There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing.'" (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L. Ed. 2d 113 (1970))). The Supreme

Court further recognized in *Parrat v. Taylor*
that "the necessity of quick action by the
State or the impracticality of providing any
meaningful predeprivation process, when
coupled with the availability of some
meaningful means by which to assess the
propriety of the State's action at some time
after the initial taking, can satisfy the
requirements of procedural due process." 451
U.S. 527, 539, 101 S. Ct. 1908, 1915, 68 L.
Ed. 2d 420 (1981), *rev'd on other grounds by
Daniels v. Williams*, 474 U.S. 327, 106 S. Ct.
662, 88 L. Ed. 2d 662 (1986).

> Side by Side Redevelopment,
> Inc. v. City of New Orleans,
> 2009 WL 1792318 at *4 (E.D. La.
> June 23, 2009).

Given the fact that the City had attempted to mail the
property owners notice and the fact that periods of seven and eight
months had elapsed between those attempts and the demolition of the
properties in question, the District Judge in the foregoing case
easily concluded that the City did not act promptly or take
"emergency action." Id. at *4-5.

In Simi Investment Co., Inc. v. Harris County, Texas, 236 F.3d
240 (5th Cir. 2000), cert. denied, 534 U.S. 1022, 122 S.Ct. 550
(2001), the Fifth Circuit found that a property owner's substantive
due process claim alleging that it was unlawfully prevented from
gaining access to an adjacent street was not subsumed by its unripe
takings claim. In passing on the defendant-appellant's petition

for rehearing <u>en banc</u>, the Fifth Circuit panel in <u>Simi Investment</u> offered the following guidance:

> [w]e take this opportunity to address the concern expressed by Harris County as to the scope of the substantive due process holding in this case. In *John Corp. v. City of Houston*, this court stated that "a careful analysis must be undertaken to assess the extent to which a plaintiff's substantive due process claim rests on protections that are also afforded by the Takings Clause." 214 F.3d 573, 583 (5th Cir. 2000). In the majority of cases involving landowner complaints, substantive due process is not the appropriate avenue of relief. Our Takings Clause jurisprudence cannot be circumvented by artful pleading of substantive due process claims. Except in the rare cases of deprivations of property based on, for example, illegitimate and arbitrary governmental abuse, vague statutes, or retroactive statutes, the takings analysis established by the Supreme Court and this circuit should control constitutional violations involving property rights that have been infringed by governmental action.
>
> <u>Simi Investment Co., Inc.</u> <u>v. Harris County, Texas</u>, 257 F.3d 323, 323-24 (5th Cir. 2001)(footnotes omitted).

Against this backdrop, the Court declines to construe plaintiff's case in any fashion other than how it was originally pled, i.e., as presenting a Fifth Amendment takings claim coupled with a related Fourteenth Amendment procedural due process claim.[3]

---

[3] In previously ruling on the City's motion to set aside entry of default, the District Judge to whom this case was initially allotted also construed this matter as a "... lawsuit pursuant to 42 U.S.C. §1983 alleging that the City

Plaintiff offers no proof that alternative action short of demolition could have been taken to stabilize the property nor does it offer proof that notice could have been given to it prior to the demolition. That the property was apparently demolished within twenty-four hours of its inspection and the resulting imminent damage determination pushes this case closer to the <u>Fuentes</u> exception and does not lend itself to an "as applied" constitutional challenge case. And given plaintiff's acknowledgment that exigent property demolitions are permissible in such situations and the Court's duty to avoid making unnecessary constitutional decisions, <u>City of Abilene v. U.S. E.P.A.</u>, 325 F.3d 657, 660 (5th Cir. 2003), the Court pretermits resolving the thorny question of whether the imminent danger demolition ordinance is unconstitutional on its face.[4] Moreover, given plaintiff's acknowledgment and the brief period of time that passed between the inspection and the demolition, the facts do not point to a case of illegitimate and arbitrary governmental abuse so as to place any substantive due process claim in a proper posture for consideration

_____

deprived SBS of its property interests without due process and without just compensation in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution." (Rec. doc. 18, p. 1)(footnote omitted).

[4] As will be discussed <u>infra</u>, plaintiff is certainly free to challenge the constitutionality of the ordinance in a state court inverse condemnation proceeding. <u>Baker v. St. Bernard Parish Council</u>, 2008 WL 4681373 at *6 (E.D. La. Oct. 21, 2008).

to the extent that any such claim was even pled.  As so construed, the Court proceeds to the merits of defendant's motion.

Plaintiff alleges that it has been deprived of its property without just compensation in violation of the Fifth Amendment. Striking as it does at the Court's jurisdiction to entertain such a claim, the question of ripeness must first be addressed.  In a takings case, ripeness is determined under the two-prong test enunciated by the Supreme Court in <u>Williamson County Regional Planning Comm. v. Hamilton Bank</u>, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116 (1985).  Under the <u>Williamson County</u> test, plaintiff must establish the following two elements to demonstrate that its takings claim is ripe: 1) that the property in question was "taken" and 2) that it was denied just compensation through state procedures.  <u>Id</u>., 473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13; <u>John Corp. v. City of Houston</u>, 214 F.3d 573, 581 (5th Cir. 2000)("[b]ecause a violation of the Takings Clause does not occur until just compensation has been denied, [plaintiff] must use available state procedures to seek such compensation before [it] may bring a §1983 takings claim to federal court.").  Speaking to the second prong of that test, the Chief Judge of this District has opined as follows:

> [t]o meet the second prong of the *Williamson County* ripeness test, a movant must also show that compensation for the alleged taking has

16

duly been sought and denied via all available administrative procedures. *Williamson Country*, 473 U.S. at 186-187. "The Fifth Amendment does not proscribe the taking of property; it proscribes the taking without just compensation." *Id.* at 194. As a result, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* This includes relevant state procedures, such as inverse condemnation proceedings. *Id.* at 196. The Fifth Circuit has interpreted this requirement as meaning that a plaintiff asserting a taking must first "present its inverse condemnation action to the state court in a posture such [that] the state court could rule on [the] claim," before coming to federal court. *Liberty Mutual Ins. Co. v. Brown*, 380 F.3d 793, 798 (5th Cir. 2004).

> Baker v. St. Bernard Parish Council, 2008 WL 4681373 at *5 (E.D. La. Oct. 21, 2008).

As was recently observed by various Judges of this District, under Louisiana law the procedure for seeking compensation for the taking or damaging of property in the absence of expropriation proceedings is a state court action for inverse condemnation. Wilhelmus v. Parish of St. Bernard, 2010 WL 1817770 at *2 (E.D. La. May 3, 2010)(quoting State through Dept. Of Transp. and Development v. Chambers Inv. Co., 595 So.2d 598, 602 (La. 1992)); Side by Side Redevelopment, Inc. v. City of New Orleans, 2009 WL 1792318 at *5 n. 27 (E.D. La. June 23, 2009); Baker, 2008 WL 4681373 at *6. See

<u>also</u> <u>Williams v. City of New Orleans</u>, 2009 WL 4723322 at *4 (E.D. La. Dec. 3, 2009). In <u>Chambers</u>, the Louisiana Supreme Court noted that "... the action for inverse condemnation arises out of the self-executing nature of the constitutional command to pay just compensation." <u>Chambers</u>, 595 So.2d at 602 (citing <u>Raymond v. State, Dept. of Highways</u>, 255 La. 425, 231 So.2d 375, 383 (1970)). Louisiana courts continue to recognize the availability of the jurisprudentially recognized cause of action for inverse condemnation. <u>Belle Company, LLC v. State through Department of Environmental Quality</u>, 25 So.3d 847 (La. App. 1st Cir.), <u>writ denied</u>, 18 So.3d 1291 and 18 So.3d 1288 (La. 2009); <u>City of New Orleans v. Bodine Land Ltd.</u>, 985 So.2d 832 (La. App. 4th Cir.), <u>writ denied</u>, 992 So.2d 988 (La. 2008); <u>SDS, Inc. v. State Dept. of Transp. and Development</u>, 978 So.2d 1013, 1015-16 (La. App. 4th Cir.), <u>writ</u> <u>denied</u>, 979 So.2d 1289 (La. 2009); <u>Holzenthal v. Sewerage & Water Board of New Orleans</u>, 950 So.2d 55, 62-63 (La. App. 4th Cir.), <u>writ</u> <u>denied</u>, 953 So.2d 71 (La. 2007).

The mere existence of a state remedy, however, is insufficient to demonstrate that a takings claim is unripe; the state remedy or procedure must also be adequate. <u>Williamson</u>, 473 U.S. at 194-97, 105 S.Ct. at 3120-22. A state procedure is "adequate even though its law is unsettled whether the claimant would be entitled to compensation." <u>Rolf v. City of San Antonio</u>, 77 F.3d 823, 826-27

(5th Cir. 1996).  For a state procedure to be deemed inadequate, "... it must be certain that the state would deny th[e] claimant compensation were he to undertake the obviously futile act of seeking it." <u>Samaad v. City of Dallas</u>, 940 F.2d 925, 934 (5th Cir. 1991).  Furthermore, a state procedure is adequate even though §1983 provides more remedies for due process violations than state law does.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 1917 (1981), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327, 106 S.Ct. 662 (1986).  It is plaintiff that bears the "...burden of establishing that [Louisiana] law unquestionably would afford [it] no remedy." <u>Samaad</u>, 940 F.2d at 935.  <u>See</u> <u>also</u> <u>Liberty Mutual Ins. Co. v. Louisiana Dept. of Ins.</u>, 62 F.3d 115, 117-18 (5th Cir. 1995).

In its complaint, plaintiff alleged that "[a]n action in state court for damages pursuant to L.C. C. Art. 2315 does not provide an adequate post-deprivation remedy." (Rec. doc. 1, ¶ 34). Irrespective of whatever remedies the State's general tort statute may provide, as was just discussed the appropriate cause of action for a property taking is one for inverse condemnation.  Plaintiff further alleged that "[a] judgment rendered against the City in state court is essentially unenforceable and uncollectible unless and until the City decides it will appropriate funds to pay the judgment.  As the City is under no obligation to appropriate funds

19

and cannot be compelled to appropriate funds, a remedy in the form of a judgment which may be uncollectible for an indefinite period of time is inadequate." (<u>Id</u>.).

In its supplemental opposition memoranda, plaintiff cites Louisiana Constitution Article 12, §10 and LSA-R.S. 13:5109 which provide that no public property or public funds are subject to seizure and that a judgment rendered against a political subdivision can be paid only out of funds that are appropriated for that purpose. These anti-seizure provisions have been in effect for some time and at least one state appellate court has concluded that there was no conflict between those provisions and other ones which provide that a political subdivision is not immune from suit or liability nor do the anti-seizure provisions violate the Fourteenth Amendment rights of judgment creditors. <u>Foreman v. Vermillion Parish Police Jury</u>, 336 So.2d 986, 989 (La. App. 3rd Cir.), <u>writ</u> <u>refused</u>, 339 So.2d 846 (La. 1976). The Chief Judge has also previously determined that the State's anti-seizure provisions do not violate the Fourteenth Amendment substantive due process or equal protection rights of judgment creditors. <u>Bennett v. City of New Orleans</u>, 2004 WL 60316 at *5-8 (E.D. La. Oct. 15, 1990).

Notwithstanding the fact that the foregoing anti-seizure provisions had long been in effect at the time of her ruling, the Chief Judge previously found that "...it is clear that Louisiana state proceedings are legally adequate to handle plaintiff's

takings claim." <u>Baker</u>, 2008 WL 4681373 at *6. While admittedly no evidence of inadequacy was presented in those proceedings, at least two other Judges of this District subsequently found in demolition cases that the plaintiffs' takings claims were not ripe where they did not first pursue state court inverse condemnation proceedings. <u>Wilhelmus</u>, 2010 WL 1817770 at *2; <u>Williams</u>, 2009 WL 4723322 at *4; <u>Side by Side</u>, 2009 WL 1792318 at *5.

In terms of specific proof of the alleged inadequacy of state procedures, plaintiff points first to a previous case in this District in which a settlement that had been reached with the City was reduced to judgment but was not allowed to be executed given the State's anti-seizure provision. <u>Hanson v. Lamar, et al.</u>, 03-CV-3401 "L"(5). That case, however, was a diversity-based personal injury action rather than a demolition case subject to the strictures of <u>Williamson County</u> and the ultimate outcome of the judgment is not known. The second case cited by plaintiff was a state court action, <u>Sullivan v. Clayton</u>, No. 98-12809 (Orleans Parish Civil District Court), that was compromised and the settlement was later reduced to a consent judgment. In attempting to get the judgment paid some years later, the City reportedly advised plaintiff's counsel that the judgment would be paid but only at a discounted rate. Again, there is no indication that <u>Sullivan</u> was an inverse condemnation case, the ultimate disposition of the judgment is not known, and the offer to pay the judgment at

a discounted rate may speak to various factors including the strength of the plaintiff's case, the practice of the administration at the time, etc. See, e.g., Baker, 2008 WL 4681373 at *6. Plaintiff's assertions regarding inadequacy, however, are mere arguments rather than competent summary judgment evidence regarding the manner in which the City deals with judgments in inverse condemnation proceedings. But "...plaintiff[] must show more than that [it] will have a difficult time in state court. Plaintiff[] must show it would be 'obviously futile' for [it] to pursue an inverse condemnation suit." Id.

Plaintiff has not demonstrated that it has been denied just compensation and the Court cannot conclude, on the showing made, that plaintiff "almost certainly" will be denied such compensation. See Coates v. Hall, 512 F. Supp. 2d 770, 788 (W.D. Tex. 2007); Samaad, 940 F.2d at 934 ("...it must be certain that the state would deny that claimant compensation were he to undertake the obviously futile act of seeking it."). Because plaintiff's takings claim is unripe, it must be dismissed without prejudice. Wilhelmus, 2010 WL 1817770 at *2; Coates, 512 F. Supp. 2d at 788. Similarly, because plaintiff has not availed itself of the inverse condemnation remedy provided by state law, its procedural due process claim is also premature and must be dismissed without prejudice as well. Wilhelmus, 2010 WL 1817770 at *2. Finally, to the extent that plaintiff's complaint can be read as asserting such

a claim, "[a]ll substantive due process claims related to takings claims are subject to the finality requirement applicable to the related takings claims" and must likewise be dismissed without prejudice. <u>Coates</u>, 512 F. Supp. 2d at 790 (citing <u>Simi</u>, 236 F.3d at 249 n. 13). To the extent that plaintiff's complaint raises any state law claims, those claims will be dismissed without prejudice as well. <u>Wilhelmus</u>, 2010 WL 1817770 at *3.

For the foregoing reasons, it is ordered that defendant's motion for summary judgment is granted and that plaintiff's suit is dismissed without prejudice.

New Orleans, Louisiana, this __8th__ of __September__, 2010.


ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE